## S95A1662. McKOON v. THE STATE.
### (465 SE2d 272)

THOMPSON, Justice.

Michael McKoon was convicted by a jury of two counts of malice murder and theft by taking. He appeals from the judgment of conviction and sentences entered thereon, and from the denial of his motion for new trial.[1]

Tim Stroud and Sara Walker were found dead in Stroud's home on July 22, 1992. Both victims had been shot twice in the head and had suffered multiple stab wounds. Stroud's Mercedes-Benz automobile and a number of personal items, including a gold watch and some jewelry, were missing. The Mercedes was later found about a mile from the residence.

On July 25, 1992, McKoon's aunt, while mowing her lawn, uncovered a cardboard tube buried in the yard behind her home. Inside the tube she found a knife, a set of keys, a Mercedes-Benz hood ornament, and a gun which she recognized as belonging to McKoon's mother. Sheriff's deputies were called to the aunt's residence, where McKoon resided along with his mother and other family members. McKoon was then 15 years old. He was arrested and *Miranda* warnings were administered in the presence of his mother, grandparents and aunt.

When McKoon asked to talk outside the presence of other family members, he was escorted out of the house by two deputies and driven to the sheriff's office. Mrs. McKoon was told that her son was being taken to the sheriff's department and that she should proceed there also. While McKoon was en route, one of the deputies stated that he wanted to drive to the crime scene to determine if the keys found buried in McKoon's yard would fit any of the vehicles parked at the Stroud residence. McKoon responded, "it's not necessary, those are the keys." He proceeded to tell the officers that he had broken into the Stroud residence, armed with a gun, and shot and killed both victims.[2]

McKoon was brought to an interview room at the sheriff's department and was joined shortly thereafter by his mother; *Miranda*

---

[1] The crimes occurred on July 22, 1992. McKoon was indicted on October 6, 1992 for two counts of felony murder, two counts of malice murder and theft by taking. Trial began on February 22, 1993, and on February 25, 1993, he was found guilty of all charges and sentence was imposed. The two convictions for felony murder were vacated and McKoon was sentenced to serve two consecutive life sentences for malice murder and a consecutive sentence of ten years imprisonment for theft by taking. A motion for new trial was filed on March 15, 1993, and amended on June 9, 1995. The motions were denied on June 9, 1995. A notice of appeal was filed on June 27, 1995. The case was docketed in this Court on July 19, 1995; oral argument was heard on October 11, 1995.

[2] McKoon also named an accomplice, Mike Blankenship, who was likewise indicted for the crimes.

warnings were again administered in her presence. McKoon executed a written waiver of rights, which also bears his mother's signature as a witness. He then gave a taped statement in which he explained in detail his commission of the crimes. While making this statement, he requested that his mother leave the room.

1. Having reviewed the evidence in a light most favorable to the verdict, we conclude that a rational trier of fact could have found McKoon guilty beyond a reasonable doubt of the crimes for which he was convicted. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. McKoon contends that his initial custodial statement, given while en route to the sheriff's department, was improperly admitted because it was (a) coerced by the officer's remark that he wanted to try the keys at the Stroud residence; (b) made in violation of OCGA § 15-11-19 (a) (4); (c) given outside the presence of a family member; and (d) after he requested the assistance of counsel. He further asserts that all subsequent statements should have been excluded.

The admissibility of statements by juveniles depends upon whether, under the totality of the circumstances, there was a knowing and intelligent waiver of constitutional rights. *Riley v. State*, 237 Ga. 124, 128 (226 SE2d 922) (1976). The burden is on the state to demonstrate that the juvenile understood and waived those rights. The analysis involves the application of a nine part test. Id. The factors a court considers include:

> [T]he age of the accused; the education of the accused; the knowledge of the accused as to the substance of the charge and nature of his rights to consult with an attorney; whether the accused was held incommunicado or allowed to consult with relatives or an attorney; whether the accused was interrogated before or after formal charges had been filed; methods used in interrogation; length of interrogation; whether accused refused to voluntarily give statements on prior occasions; and whether accused repudiated an extrajudicial statement at a later date.

*Henry v. State*, 264 Ga. 861, 862 (452 SE2d 505) (1995), applying *Riley*, supra.

After hearing testimony at a *Jackson v. Denno* hearing, the trial court applied the *Riley* factors and found under the totality of the circumstances that McKoon had knowingly and intelligently waived his constitutional rights. The court's conclusion was based on evidence that McKoon was 15 years old at the time of questioning; he was in the ninth grade and he had scored as high as the 98th percentile on various standardized tests; he acknowledged the receipt of *Mi-*

*randa* warnings along with an explanation that he was being questioned about the murders and the burglary; he acknowledged that he fully understood his right to an attorney and his right to remain silent; and he was questioned prior to the filing of charges against him.

Although the evidence was in conflict as to whether McKoon had requested an attorney prior to giving his initial statement — McKoon testified that he made the request, while a police officer testified that he had not — the trial judge found that at the time he was questioned, McKoon had neither requested an attorney nor consultation with a relative. There is ample evidence to support this finding. Credibility determinations by the court at a *Jackson v. Denno* hearing will not be disturbed unless clearly erroneous. *Worthy v. State*, 253 Ga. 661 (3) (324 SE2d 431) (1985).

Neither was the confession rendered inadmissible because of the officer's statement regarding the keys to the Stroud residence. McKoon's statement was unsolicited, rather than the product of express questioning. Considering the totality of the circumstances in which it was made, we do not find that the statement was the product of coercion. See generally *Spence v. State*, 252 Ga. 338 (2) (313 SE2d 475) (1984).

McKoon also asserts that the statutory procedural safeguards protecting the rights of juveniles were violated because he was not brought directly before the superior court as required by OCGA § 15-11-19 (a) (4). Since the statement at issue was knowingly and intelligently given before the officers had an opportunity to take McKoon anywhere, OCGA § 15-11-19 (a) (4) was neither implicated nor violated.

Nor did the absence of McKoon's mother render the statements inadmissible. This Court has held that there is no requirement that a parent be present during questioning of a minor. *Duffy v. State*, 262 Ga. 249, 251 (416 SE2d 734) (1992); *Marshall v. State*, 248 Ga. 227, 228 (282 SE2d 301) (1981). The absence of a parent is just one of nine factors that this Court considers. Id. Moreover, McKoon specifically elected to speak to the officers outside the presence of his mother.

The court properly determined that under the totality of the circumstances, McKoon freely, knowingly, and voluntarily waived his *Miranda* rights and that any custodial statements were admissible into evidence. We find no error in that ruling.

*Judgment affirmed. All the Justices concur.*

· DECIDED JANUARY 8, 1996.

*Johnny B. Mostiler,* for appellant.

*Johnnie L. Caldwell, Jr., District Attorney, Michael J. Bowers, Attorney General, Susan V. Boleyn, Senior Assistant Attorney Gen-*

*eral, Marla-Deen Brooks, Assistant Attorney General,* for appellee.