## A01A0536. SATTERWHITE v. THE STATE.
### (551 SE2d 428)

PHIPPS, Judge.

A grand jury indicted Harvey Satterwhite for rape and child molestation. After a trial, he was convicted of child molestation. Satterwhite appeals, contending that the trial court erroneously admitted similar transaction evidence. Because we find no reversible error, we affirm.

The evidence showed that in August 1997, ten-year-old H. C. went to the home of Satterwhite and his family to spend the night with Satterwhite's daughter, who was her friend. H. C. testified that as she lay on a mattress placed on the floor of her friend's bedroom, Satterwhite approached her, rolled her onto her back, pulled her shorts down to her ankles, moved her panties aside, exposed his penis, placed it in her vagina, and then moved up and down. After Satterwhite left the room, H. C. started crying, and Satterwhite's wife called her mother, who came to take her home. As they rode away, H. C. told her mother what had happened. Her mother drove to the police station, where H. C. reported the incident. Afterward, H. C. underwent medical examination at a hospital. The examining physician testified that while her vaginal area had a "reddish appearance generally," there was no swelling or laceration and the hymeneal ring was intact.

At trial, the State introduced similar transaction evidence that in 1981, Satterwhite attempted to rape a four-year-old girl and that in 1985, he pulled a co-worker into a restroom of the fast food restau-

rant where they worked and then choked and raped her. The State also introduced a certified copy of Satterwhite's guilty plea to four counts of sexual battery and called three of those victims to testify in this case. One battery victim testified that in January 1992, as she was walking from a store, Satterwhite "brushed his hand across [her] butt. . . ." A second victim testified that in January 1992, as she was power-walking around a track behind a local hospital, Satterwhite quietly walked up behind her and "grabbed between [her] legs and kind of squeezed a little bit. . . ." A third victim testified that in November 1992, as she was leaving a fitness center, Satterwhite "ran up behind [her] and grabbed [her] on both sides of [her] rear." The fourth victim did not testify.

1. Satterwhite contends that the trial court erred in admitting similar transaction evidence that while a juvenile, he attempted to rape a four-year-old child. A police officer who investigated the reported rape that occurred in woods behind an apartment complex testified that Satterwhite had confessed

> that he indeed had rode the bicycle and had the victim on the back on it, rode her into the woods, asked her to pull her — he said that she'd fell off the bicycle, he stopped and asked her to pull her underwear down, stated that he tried to enter her vagina with his penis, she began to holler and started bleeding, he became scared, ran out of the woods, leaving the victim in the woods by herself.

Satterwhite argues that the statement, given when he was a juvenile, was not a knowing and intelligent waiver of his right to remain silent. Before admitting the statement, the trial court held a *Jackson-Denno*[1] hearing and considered the nine factors set forth in *Riley v. State*[2] for determining whether a juvenile's incriminating statements were voluntary. The court determined that Satterwhite knowingly and intelligently waived his constitutional rights when he gave the incriminating statement. We must uphold that finding unless it is clearly erroneous.[3]

Satterwhite argues that given the absence of a signed *Miranda*

---

[1] *Jackson v. Denno*, 378 U. S. 368 (84 SC 1774, 12 LE2d 908) (1964).

[2] 237 Ga. 124, 128 (226 SE2d 922) (1976) (the factors are (1) the accused's age; (2) the accused's education; (3) the accused's knowledge of the substance of the charge and his right to consult with a lawyer and remain silent; (4) whether the accused was held incommunicado or allowed to consult with relatives, friends, or an attorney; (5) whether the accused was questioned before or after formal charges were filed; (6) the interrogation methods; (7) the interrogation length; (8) whether the accused previously refused to give statements; and (9) whether the accused repudiated the statement later).

[3] *Reynolds v. State*, 217 Ga. App. 570, 572-573 (5) (458 SE2d 855) (1995).

waiver, there is no evidence that he understood his right to consult with an attorney. He further claims that the record is silent as to his education and whether he repudiated the confession.

The investigator testified that he had interviewed Satterwhite at the police station on the day of the reported rape and the next day. At that time, Satterwhite was 16 years old and on juvenile probation. The investigator could not recall whether a family member was with Satterwhite but testified that "[i]t was policy for either a juvenile officer or a parent to be present during the questioning of a juvenile. . . ." During the first interview, the investigator was dressed in civilian clothing. He explained to Satterwhite the nature of his investigation and questioned him for approximately 30 minutes, without challenging any of his answers. Satterwhite admitted that he had been riding a bicycle in the parking lot of the apartment complex but denied seeing the victim. He was released without being charged. But because other witnesses later reported that Satterwhite was involved in the crime, the investigator interviewed Satterwhite a second time.

During the second interview, a juvenile intake officer was present. Although the investigator did not have a copy of a *Miranda* rights form in the case file, he testified that he advised Satterwhite of those rights, and Satterwhite testified that he remembered that the investigator "went over some questions" and told him that anything he said could be used against him. The investigator estimated that he questioned Satterwhite for less than an hour. Shortly after Satterwhite was told that other witnesses had contradicted his earlier statement, he made the incriminating statement. Again, Satterwhite was allowed to leave without being charged.

Although the record is silent as to Satterwhite's level of education at the time, that is just one of nine factors to be considered.[4] The record does contain evidence that the investigator explained to Satterwhite his *Miranda* rights and the nature of the investigation. And given the temporal proximity of the rape and Satterwhite's second interview, it reasonably can be inferred that he understood at that time why the investigator was questioning him. While no family member was present during the interviews, there is no requirement that a parent be present during questioning of a minor.[5] Formal charges were not filed until some time after the second interview. There was nothing unusual or coercive about either the length or method of the interrogations, and Satterwhite did not resist questioning. The investigator testified that during the course of his inves-

---

[4] See *McKoon v. State*, 266 Ga. 149, 151 (2) (465 SE2d 272) (1996).
[5] Id.

tigation, Satterwhite did not repudiate the confession. And although Satterwhite denied at the trial of the instant case that he had made the confession, testifying that the victim had injured herself by falling from a bicycle that they were riding, the trial court is the sole judge of witness credibility.[6] Reviewing the totality of the circumstances surrounding Satterwhite's statement, we find that the trial court's conclusion that he made a knowing and voluntary statement was not clearly erroneous.[7]

2. Satterwhite contends that the trial court erred in admitting similar transaction evidence that he raped a co-worker and committed four acts of sexual battery. He argues that the transactions were not sufficiently similar to the crimes with which he was charged.[8] At trial, Satterwhite took the stand and denied the charges of the instant case. Evidence of the transactions was admitted to show Satterwhite's bent of mind, course of conduct, method of operation, lustful disposition, and identity. To meet the "similarity" requirement for the admission and use of similar transaction evidence, the State must affirmatively show a sufficient connection or similarity between the independent offense or act and the crime charged so that proof of the former tends to prove the latter.[9] The rule allowing similar transaction evidence has been most liberally extended in the area of sexual offenses.[10] Absent an abuse of discretion, we will not disturb a trial court's determination that similar transaction evidence is admissible.[11]

(a) As to the rape of a co-worker, Satterwhite points out that the rape involved an adult and that in this case he was convicted of child molestation. But Satterwhite was charged with rape as well as child molestation. And evidence was presented that Satterwhite had nonconsensual intercourse with the child victim.[12] Thus, proof that Satterwhite raped a co-worker does tend to prove one of the charges of this case.[13] A difference in the ages of the victims does not render the acts dissimilar.[14] The trial court did not abuse its discretion.

(b) As to the sexual battery convictions, the State has not met its burden. The only similarity between those prior crimes and these charges is that all were of a sexual nature. Without more, proof that

---

[6] *Hall v. State*, 230 Ga. App. 378, 380 (3) (496 SE2d 475) (1998), overruled on other grounds, *Hanifa v. State*, 269 Ga. 797, 803 (2) (505 SE2d 731) (1998).

[7] See *Attaway v. State*, 244 Ga. App. 5 (534 SE2d 580) (2000).

[8] See *Williams v. State*, 261 Ga. 640, 642 (2) (b) (409 SE2d 649) (1991).

[9] *Livery v. State*, 233 Ga. App. 332, 334 (1) (a) (503 SE2d 914) (1998).

[10] Id.

[11] Id.

[12] See *Roberts v. State*, 242 Ga. App. 621, 624 (1) (b) (530 SE2d 535) (2000).

[13] See *Wallace v. State*, 228 Ga. App. 686, 689-690 (3) (492 SE2d 595) (1997).

[14] See *Rary v. State*, 228 Ga. App. 414, 415 (1) (b) (491 SE2d 861) (1997).

Satterwhite committed one sexual offense does not tend to prove the other.[15] The trial court abused its discretion in admitting the sexual battery convictions as similar transactions. Nevertheless, given H. C.'s testimony, the physician's testimony, and the properly admitted similar transaction evidence that Satterwhite previously raped a co-worker and attempted to rape a four-year-old child, it is highly probable the admission of this evidence did not contribute to the verdict.[16]

*Judgment affirmed. Smith, P. J., and Barnes, J., concur.*

DECIDED JULY 2, 2001 — 

*Dennis T. Blackmon, Allen M. Trapp, Jr.,* for appellant.
*Peter J. Skandalakis, District Attorney, Anne C. Allen, Assistant District Attorney,* for appellee.

---

[15] See *Bloodworth v. State,* 173 Ga. App. 688, 689 (1) (327 SE2d 756) (1985); see also *Prickett v. State,* 220 Ga. App. 244, 245 (1) (469 SE2d 371) (1996), overruled on other grounds, *State v. Belt,* 269 Ga. 763, 764, n. 1 (505 SE2d 1) (1998); accord *Smith v. State,* 249 Ga. App. 39, 40-41 (1) (547 SE2d 598) (2001) (where the only similarity between the unrelated offenses of the rape of an adult woman and the child molestation was that both were of a sexual nature, court should sever the trial).

[16] *Haska v. State,* 240 Ga. App. 527, 529 (2) (523 SE2d 589) (1999).